DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**T.H.,** the Father, and **S.D.,** the Mother,
Appellants,

v.

**STATE OF FLORIDA, DEPARTMENT OF CHILDREN AND FAMILIES,**
Appellee.

Nos. 4D17-1217 and 4D17-1218

[August 30, 2017]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Alberto Ribas, Jr., Judge; L.T. Case No. 14-826 CJ-DP.

Lori D. Shelby, Fort Lauderdale, for appellant T.H., the father.

Richard F. Joyce of the Law Office of Richard F. Joyce, P.A., Miami, for appellant S.D., the mother, as to T.D.H.

Pamela Jo Bondi, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for appellee.

Matthew Charles Wilson, Sanford, for Guardian Ad Litem Program.

CIKLIN, J.

In these consolidated appeals, T.H. ("the Father") and S.D. ("the Mother") appeal the final judgment terminating their parental rights. The Father appeals with respect to two children, S.H. and T.D.H.; the Mother appeals with respect to T.D.H.[1] We affirm as to the termination of the Father's rights as to S.H., but we reverse the portions of the judgment terminating the parents' rights as to T.D.H.

The Mother and the Father are the parents of S.H., born in July 2014, and T.D.H., born in November 2015. Days after her birth, S.H. was

---

[1] The Mother does not raise any error with respect to termination of parental rights as to her other children, S.H. and E.D.

sheltered based on allegations of domestic violence and drug use. She was placed in the care of a family friend and the parents were granted supervised visits.

About one month later, the Department of Children and Families ("the Department") petitioned for an adjudication of dependency. After the parents failed to appear for the adjudicatory hearing and consents were entered on their behalf, the Department was unable to locate the Mother and the Father for many months. Ultimately, in March 2015, the Department petitioned to terminate the Mother's and Father's parental rights as to S.H. With respect to the Father, the Department alleged only one ground, abandonment under section 39.806(1)(b), Florida Statutes (2015).

In May 2015, the parents were arrested for burglary after an alleged altercation at the home of S.H.'s caretaker. Meanwhile, a review hearing was set for December 2015 in the termination proceedings. A few weeks before the review hearing, the Mother gave birth to T.D.H. Days later, the Department filed a shelter petition with respect to T.D.H., and the child was ultimately placed with his paternal grandmother. In November 2015, the Department filed a supplemental petition for termination of parental rights with respect to T.D.H., alleging a failure to substantially comply with the case plan under section 39.806(1)(e)1., Florida Statutes.

After a multi-day adjudicatory hearing, the trial court granted the petition and supplemental petition, and issued a lengthy judgment which included findings that the Department met its burden of proof "as to the allegations in the Petitions to Terminate Parental Rights," and that termination was based on "the allegations set forth in the Petitions for Termination of Parental Rights."

The Mother and Father argue that the termination with respect to T.D.H. constitutes error, as the Department did not plead a valid ground for termination. The Department and the Guardian Ad Litem ("GAL") concede error but argue that unpled grounds were tried by implied consent and established. We accept the concession of error but reject the invitation to find that unpled grounds were tried by implied consent.

As to T.D.H., the Department based its request for termination of parental rights on section 39.806(1)(e)1., which permits the termination of parental rights under the following circumstances:

> (e) When a child has been adjudicated dependent, a case
> plan has been filed with the court, and:

2

1. The child continues to be abused, neglected, or abandoned by the parent or parents. The failure of the parent or parents to substantially comply with the case plan for a period of 12 months after an adjudication of the child as a dependent child or the child's placement into shelter care, whichever occurs first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due to the parent's lack of financial resources or to the failure of the department to make reasonable efforts to reunify the parent and child. The 12-month period begins to run only after the child's placement into shelter care or the entry of a disposition order placing the custody of the child with the department or a person other than the parent and the court's approval of a case plan having the goal of reunification with the parent, whichever occurs first[.]

The Department correctly concedes error. With respect to T.D.H., there was no adjudication of dependency and no case plan had been filed with the court. *See A.H. v. Dep't of Children & Family Servs.*, 915 So. 2d 761, 762 (Fla. 2d DCA 2005) (holding that section 39.806(1)(e) "was not a valid legal ground for termination" where the child was never adjudicated dependent, "which is a prerequisite to termination under this provision"); *J.T. v. Dep't of Children & Family Servs.*, 819 So. 2d 270, 271-72 (Fla. 2d DCA 2002) (finding section 39.806(1)(e) applies only "when a parent has been provided with a case plan with a goal of reunification" and the child is adjudicated dependent).

However, the Department, operating under the belief that the termination can stand based on the unpled grounds of abandonment under section 39.806(1)(b) and threatened harm to the child irrespective of services under 39.806(1)(c),[2] requests that we remand for the trial court to be given the opportunity to make findings as to those unpled grounds. After undertaking a thorough review of the record, including a trial stipulation exhibit, the transcript of the adjudicatory hearing, and the written final judgment, we find that we are not in a position to say

---

[2] The Department sought termination of the Mother's parental rights as to S.H. based on section 39.806(1)(b), (1)(c), and (1)(e)1.-2. The Department sought termination of the Mother's parental rights as to E.D. based on section 39.806(1)(b), (1)(c), and (1)(e)1. With respect to the Father, the Department sought termination of parental rights as to S.H. based on section 39.806(1)(b).

that the parents were on notice that the court could terminate their parental rights as to T.D.H. based on unpled grounds. Accordingly, and in light of the concession of error, we reverse the final judgment to the extent it terminates the parental rights of the Mother and Father as to T.D.H.

With respect to S.H., the Father argues that the Department did not prove abandonment, as the evidence showed that tension between the child's caretaker and the parents interfered with their ability to maintain a relationship with the child. He also argues that he worked diligently on case plan tasks and that termination was not the least restrictive means of safeguarding the child or in her manifest best interests. We disagree on all points.

Section 39.806(1)(b), Florida Statutes, permits termination in cases of "[a]bandonment as defined in s. 39.01(1) or when the identity or location of the parent or parents is unknown and cannot be ascertained by diligent search within 60 days." "Abandonment" is defined as follows:

> [A] situation in which the parent . . . of a child . . . has made no significant contribution to the child's care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both. For purposes of this subsection, "establish or maintain a substantial and positive relationship" includes, but is not limited to, frequent and regular contact with the child through frequent and regular visitation or frequent and regular communication to or with the child, and the exercise of parental rights and responsibilities. Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child. . . . The incarceration, repeated incarceration, or extended incarceration of a parent . . . may support a finding of abandonment.

§ 39.01(1), Fla. Stat. (2015).

Here, there was evidence that visits between the parents and S.H. were initially supervised by the caretaker. The Father visited S.H. during that period, but he was confrontational with the caretaker, resulting in the Department taking over supervision of any future visits. The Father did not visit S.H. after the Department took over supervision – the last time he saw S.H. was in September or October 2014, when she was about two or three months old. The Father then failed to appear for the

dependency trial and a consent was entered. But instead of engaging in the case plan, the Father disappeared. After the Department searched for him for sixty days without success, a termination petition was filed. The Father did not appear in court on the termination proceedings until after he was arrested for the alleged altercation at the caretaker's home.

During his incarceration, the Father sent S.H. letters via the child advocate. But the Father did not show enough interest in S.H. to learn the most mundane details of her life. He could not name her doctor, school, teacher, daycare, or favorite toy. The summer after the Father's release from jail, S.H. celebrated her birthday; she received no gifts or correspondence from the Father. Further, the Father failed to provide any support for S.H., financial or otherwise. The Father works almost full-time. He testified about some expenses, but it was not apparent that he was not able to afford even a nominal gift for the child.

The Father claims that his attempts at bonding with S.H. were thwarted by her caretaker, but the evidence does not support this contention. The caretaker welcomed the parents into her home and encouraged them to visit S.H. It was only after the Father was verbally abusive toward the caretaker that the Department found it necessary to take over supervision of the visits. The Father also argues that a lack of reliable transportation was at the root of his failure to visit S.H. before his arrest, but the evidence reflects that he did not even attempt to coordinate visits. He also contends that his completion of case plan tasks establishes that he did not abandon S.H. But the evidence shows that he completed case plan tasks only after the termination trial began, and also that he was not in substantial compliance; after being successfully discharged from outpatient substance abuse treatment, he refused to submit to a random drug test. We have no trouble finding that the Department established abandonment under section 39.806(1)(b).

We turn now to the Father's argument that termination of parental rights was neither the least restrictive means nor in the manifest best interests of S.H.[3] Aside from proving a statutory ground for termination, the party seeking to terminate parental rights must also prove that termination is in the manifest best interests of the child. *B.K. v. Dep't of Children & Families*, 166 So. 3d 866, 873 (Fla. 4th DCA 2015). Further, "to satisfy constitutional concerns, [the petitioner] also must prove that termination is the least restrictive means to protect the child from

---

[3] We do not consider this argument with regard to T.D.H., in light of our reversal of the termination order as to T.D.H.

serious harm." *Id.* "The state must present clear and convincing evidence to support each element." *Id.*

Section 39.810, Florida Statutes (2015), sets forth a list of non-exhaustive factors for a court to consider in determining the manifest best interests of the child. "[A] manifest best interests decision is not made to protect the legal rights of the parents; it is made to ensure the best interests of each child." *K.D. v. Dep't of Children & Family Servs.*, 132 So. 3d 877, 879 (Fla. 2d DCA 2014).

The trial court here considered these factors and made express findings. Additionally, the evidence of the lack of a bond between the Father and S.H., the Father's lack of interest in details of the child's life, and his failure to give her even nominal provisions, combined with the evidence of the child's bond to her caretaker and the caretaker's willingness to adopt her, supports the trial court's manifest best interests finding.

Turning to the least restrictive means prong of the termination analysis, "[t]he least restrictive means test . . . is not intended to preserve the parental bond at the cost of the child's future. . . . Rather, it simply requires that those measures short of termination should be utilized if such measures will permit the safe reestablishment of the parent-child bond." *B.K.*, 166 So. 3d at 876 (third alteration in original) (citation omitted).

Here, the evidence established that the Father was in denial regarding his need for services. He rebuffed case plan advocates who sought to connect him with services and reunite him with S.H. He sought a trial on the dependency petition yet failed to appear at trial. He then disappeared for at least sixty days, reappearing only after he was arrested. He provided no explanation for his disappearance. He waited until ten months after S.H. was sheltered before he began accepting referrals for his case plan tasks. This was only after the termination petition was filed and he was incarcerated. Although he completed his case plan tasks by the last day of trial in November 2016, he did not submit to requested random drug tests after he was successfully discharged from substance abuse treatment. Given this evidence, and the evidence of a complete lack of bond between the child and the Father, termination was the least restrictive means of protecting the child.

With respect to the Father, we affirm the termination as to S.H. With respect to the Mother and the Father, we reverse the termination as to T.D.H. The final judgment is otherwise affirmed in all respects.

*Affirmed in part, reversed in part.*

GROSS and DAMOORGIAN, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**